## ROBINSON v. CHICAGO CITY RY. CO. et al.*

(Circuit Court of Appeals, Seventh Circuit. January 29, 1902.)

### No. 810.

1. PATENTS—INFRINGEMENT—MOLD FOR CASTING CAR WHEELS.

Claims 7 and 9 of the Robinson patent, No. 594,286, covering a mold for the casting of composite or other wheels, disclose invention and are valid; also construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

S. A. McEliver and James E. White, for appellant.
C. K. Offield and T. A. Banning, for appellees.

Before JENKINS and GROSSCUP, Circuit Judges.

PER CURIAM. In the suit below, the appellant alleged infringement of letters patent No. 594,286, issued to himself November 23,

* Rehearing denied November 15, 1902.

1897, and relating to a mechanical combination process for the casting of composite or other wheels. The object of the invention is to make a composite wheel with the outer portions or sides of one metal and the inner portions of another, and, in the case of pulleys, to give to the center of the groove of the pulley a hard or chilled surface, while leaving the balance of the metal soft. The letters patent contain ten claims, but it is apparent, from an examination of the record now before us, that appellant must depend upon the seventh and ninth claims of his patent alone for the relief sought. It is insisted, however, by counsel for appellant, that these claims must be read in connection with the specification. The seventh and ninth claims above referred to read as follows:

"(7) In combination with a mold for casting grooved wheels, a metal ring for forming the grooved periphery of said wheel, and having a radial cavity, 10, intermediate its faces, to receive a filling of sand, for substantially the purpose set forth."

"(9) In a mold for casting composite grooved wheels, the metal ring, 7, constructed to fit between the top and bottom of the mold, and disks forming the sides of the wheel, fitted to said ring and spaced apart by the ring to receive the metal filling between them, substantially as herein described."

The defense is noninfringement, but must, of course, be considered in connection with the entire claims. Upon final hearing the court below dismissed the bill for want of equity, but without prejudice to the appellant. In the preparation of his record the appellant, although not an attorney, acted as his own counsel, and on his own behalf has furnished a record in this case so unusual, both as to form and extent, that the court has been forced to labor and investigate the evidence and the patent, unaided by the expert presentation commonly found in patent litigation. He did not avail himself of an expert, capable of pointing out the similarities and differences that exist in the mechanical art between mechanical devices, nor did appellant himself disclose a capability of so doing. In dismissing the bill for want of equity, but without prejudice, the court below evinced a recognition of the failure of the appellant to properly conduct his case, and therefore dismissed the bill without prejudice to the appellant.

A study of the patent in suit clearly discloses that the appellant supposed, when he filed his application for letters patent, that the patent carried with it three particular inventions: (1) That he had invented an improved method or process for casting composite or other wheels; (2) that he had invented an improved form of mold adapted to carry out such improved method or process for casting composite or other car wheels; and (3) that he had invented a new wheel or resulting product thereby. The above conclusions are borne out by the following quotations from the letters patent in question:

"My invention has for its objects to provide a method and apparatus whereby wheels of various kinds may be cast in an economical and effective manner, and which method and apparatus are for the most part adapted for making composite wheels wherein the outer portions or sides are of one metal and the interior portions are of another metal, cast upon the outer portions or sides, and also to casting a filling of a certain character in grooved wheels."

"By my improved method of procedure and with my improved form of mold I am not only able to successfully cast hard metal of high electric conductivity, such as brass or copper, into the groove of an iron trolley wheel, but I am enabled to produce, by casting, an entirely new construction of trolley wheel."

"In carrying out my invention as above outlined I employ certain novel features in the construction of the mold in addition to what has been described. * * * With a mold constructed as described there is ample room for escape of the gases through the sand fillings, and the mold is practically a ventilated mold. I have found in practice that perfect castings may be obtained by a mold constructed in this way, and such a mold may be repeatedly used, and wheels of any kind turned out therefrom which require little or no finishing."

The appellant cannot contend, under the patent in suit, as to claims 7 and 9, that the improved method or process, therein asserted as his invention, has been infringed. Nor can he contend that the resulting product of his process is infringed, because the molds of claims 7 and 9 are for a specific construction only, forming the sole subject-matter of these claims, and further because he distinctly indicates in the patent in suit that the invention of his improved process forms the subject-matter of a separate application then pending, of which he gives the serial number and date, and respecting which he says, in the patent in suit:

"I do not herein claim the construction of a wheel formed by the mold just described, as the same constitutes a part of the subject-matter of an application filed on even date herewith, serial No. 622,819."

The patent in suit, we are convinced, rises to the level of distinct invention, in the production of a composite metallic wheel with the qualities and characteristics disclosed, and by the means particularly described and claimed; but it is equally clear to us that, as to claims 7 and 9, the appellant has contented himself with, and has claimed only, a particular mechanical form or combination of mold, adapted to carry out the improved process and to produce the desired wheel product. In these two respects—the improved process and the wheel product—the appellant has made a substantial step forward in the practical effectiveness of the molder's art. The difficulties of appellant's case do not lie in the question of utilities.

The defense, in substance, contend that the metal ring mentioned in claims 7 and 9 (in claim 7, as a metal ring for forming grooved periphery, and having a radial cavity, 10, intermediate its faces, to receive a filling of sand; and in claim 9, as the metal ring, 7, constructed to fit between the top and bottom of the mold) is the entire ring, including both the inside ring, the sand circles, and the outside frame with the radial cavity, 10, and that upon such a construction there is no infringement. The appellant, on the other hand, insists that such is not the intent of the claims; that the metal ring spoken of is the first effort in the art of molding to present a ring that would be firm and not moved by the pouring in of the metal, and that, though appellees do not copy the ring of appellant exactly, they nevertheless copy this idea, and thereby are able to produce a mold which preserves the center to the wheel.

The patent, in this respect, we have closely studied, and are of the opinion that the metal ring of claim 7, with its radial cavity, 10, intermediate its faces, to receive a filling of sand, when used in the mold as described in the patent, undoubtedly produces and assures a depth of central chill not previously found in the molders' art, and that this radial cavity is the essential element of the claim,—the element that gives to it vitality and value. We are of the opinion, also, that the metal ring, 7, referred to in claim 9, and constructed to fit between the top and bottom of the mold and the disks fitted to such ring, and spaced apart by the ring to receive the metal filling between them, are the essential elements of the claim,—the elements that assure to the mold in question the resulting effect of its construction, and give to the wheel a true circle, thus preventing the grinding of the wheel necessary in the previous art.

With claims 7 and 9 thus construed, it is evident that the mold used by the appellees does not infringe the patent in suit. The mold of appellees is a two-section mold, employing a well-known form of chill, made in two parts and lying entirely within the lower section of the mold, and not between the two sections thereof, while the mold of the patent in suit is a three-part mold, having an upper and lower section, with an interposed metal ring for forming grooved periphery of the wheel between these upper and lower sections. There is absent from appellees' mold the metal ring, with its radial cavity, 10, intermediate its faces, as provided for and made certain in claim 7 of the patent in suit; and there is absent, also, from appellees' mold the metal ring, 7, and the disks fitted to such ring, as provided for and made certain by claim 9 of the patent in suit. Nor, in our judgment, is there a substitution of mechanical equivalents, or of devices adapted to perform the duty of any of these omitted parts. In reaching this conclusion we have not considered the evidence tending to show that the wheel claimed to infringe and the process used in its production was in use as long ago as the year 1889, some eight years prior to the appellant's patent.

In view of the mechanical features that distinguish the mold employed by appellees from that of the patent in suit, we are constrained to hold that the former constitutes no infringement upon the latter, as covered by the seventh and ninth claims thereof, and the decree of the circuit court must therefore be affirmed.